# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Criminal No. 15-188 (APM) |
| JAMES MARVIN REED, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Before the court is the Government's First Motion for Continuance, which requests that the court (1) move the trial presently set for June 13, 2017, to a date in October 2017, and (2) exclude the intervening days from the 70-day period in which Defendant James Marvin Reed must receive a trial, pursuant to the Speedy Trial Act, 18 U.S.C. §§ 3161–3174. As grounds for these requests, the Government submits that four of its essential witnesses are unavailable on either the present trial date—June 13, 2017—or the alternative trial date recently proposed by the court, August 14, 2017. Defendant, who is detained pending trial on two counts of engaging in illicit sexual activity with minor victims while in the Philippines, opposes the Motion and asserts his right to a speedy trial.

For the reasons that follow, the court grants in part and denies in part the Government's Motion. The court will continue the trial to August 14, 2017, but will not exclude any time under the Speedy Trial Act.

## I. BACKGROUND

On December 15, 2015, a grand jury indicted Defendant James Marvin Reed on one count of traveling in foreign commerce and engaging in illicit sexual conduct, in violation of 18 U.S.C. § 2423(c). *See* Indictment, ECF No. 1; Arrest Warrant, ECF No. 9. On August 3, 2016, the Philippines' Immigration Authority arrested Defendant, and the U.S. Department of Homeland Security subsequently took him into custody and transported him to the United States. *See* Def.'s Resp. to Gov't's Mot. to Continue Trial, ECF No. 28 [hereinafter Def.'s Opp'n], at 1. Defendant appeared before a Magistrate Judge in the Central District of California on September 16, 2016, in Los Angeles, California, whereupon he was ordered held without bond. *See* Order of Detention After Hearing, ECF No. 8, at 12–15. Defendant made his initial appearance and was arraigned in this District Court on October 4, 2016, and a Magistrate Judge again ordered him held without bond. *See* Minute Order, Oct. 4, 2016. Defendant's 70-day Speedy Trial period began to run as of that date. *See* 18 U.S.C. § 3161(c)(1) (providing that the 70-day period commences "from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs").

At subsequent hearings, Defendant moved to exclude days from the Speedy Trial calculation. Defendant's first hearing before this court took place on October 17, 2016, at which point 13 days had run on the Speedy Trial clock following his arraignment. *See id.* At that hearing, Defendant moved to exclude the time between October 18 and November 17, 2016, from the 70 days allowed under the Act, which the court granted in the interest of justice. *See* Order, ECF No. 11; 18 U.S.C. § 3161(h)(7). Similarly, at a status conference held on November 12, 2016, Defendant moved to exclude the time between November 18, 2016, and January 18, 2017,

which the court again granted in the interest of justice.  *See* Order, ECF No. 12; 18 U.S.C. § 3161(h)(7).  Once more, at a status conference held on January 18, 2017, Defendant moved to exclude the time between January 19 and March 20, 2017, which the court granted in the interest of justice.  *See* Order, ECF No. 14; 18 U.S.C. § 3161(h)(7).  Thus, as of March 20, 2017, only 13 days of Defendant's Speedy Trial time had run.

The Speedy Trial clock re-started on March 21, 2017, after Defendant declined to toll any additional time during a status hearing held on the previous day.  *See* Hr'g Tr., Mar. 20, 2017. The court entered a Pretrial Order on March 21, 2017, that directed Defendant to file his pretrial motions on or before April 3, 2017, and set trial to begin on June 13, 2017.  *See* Pretrial Order, ECF No. 15.  Defendant moved for an extension of time to file his pretrial motions on March 31, 2017, which the court granted the same day.  *See* Def.'s Mot. for Ext. of Time, ECF No. 16; Minute Order, Mar. 31, 2017.[1]  The court ordered Defendant to file his pretrial motions on or before April 12, 2017, and excluded the days from April 4 to April 12, 2017, in computing the Speedy Trial time.  *See* Minute Order, Mar. 31, 2017.[2]  Between March 21 and April 3, 2017, an additional 13 days ran on the Speedy Trial clock, meaning that, as of April 3, 2017, a total of 26 days had run on the 70-day period.  Defendant filed three pretrial motions, including two motions

---

[1] The court does not treat the Speedy Trial clock as tolled on March 31, 2017, because the court ruled on Defendant's Motion on the same day it was filed.  *Cf.* 18 U.S.C. § 3161(h)(1)(D).

[2] The court mistakenly tolled the Speedy Trial clock as of Monday, April 4, 2017, instead of Saturday, April 1, 2017. In any event, the court takes this opportunity to augment the record with respect to the Minute Order entered on March 31, 2017, which did not identify the basis for tolling the time from April 4 to April 12, 2017, while Defendant prepared his pretrial motions.  *See Zedner v. United States*, 547 U.S. 489, 507 (2006) (allowing the district court to put its findings on the record any time prior to ruling on the defendant's motion to dismiss under 18 U.S.C. § 3162(a)(2)). That time was not automatically tolled under 18 U.S.C. § 3161(h)(1)(D).  *See Bloate v. United States*, 559 U.S. 196, 203–04, 215 (2010).  Instead, the court determined—and now commits to the record—that the interests and ends of justice were best served, and outweighed the interests of the public and Defendant in a speedy trial, by excluding those days from the Speedy Trial calculation.  *See* 18 U.S.C. § 3161(h)(7)(A).  The roughly one-week extension of time was necessary because the motions involve complex legal questions and failure to provide the continuance would have denied defense counsel adequate time to prepare and serve his client, resulting in a miscarriage of justice.  *Id.* § 3161(h)(7)(B).  Accordingly, the court granted the continuance and excluded the time from April 4 to April 12, 2017.  *See* Minute Order, Mar. 31, 2017.

to dismiss the indictment, on April 12, 2017, thereby halting the Speedy Trial clock. *See* 18 U.S.C. § 3161(h)(1)(D); Def.'s Mot. for Bill of Particulars, ECF No. 17; Def.'s Mot. to Dismiss Indictment Due to Pre-Indictment Delay, ECF No. 18; Def.'s Mot. to Dismiss the Indictment, ECF No. 19. After the court granted the Government's two unopposed motions for extensions of time, *see* Minute Order, Apr. 20, 2017; Minute Order, Apr. 26, 2017, the Government filed three opposition briefs on May 1, 2017. *See* Gov't's Resp. to Def.'s Mot. for Bill of Particulars, ECF No. 23; Gov't's Resp. to Def.'s Mot. to Dismiss Indictment Due to Pre-Indictment Delay, ECF No. 24; Gov't's Resp. to Def.'s Mot. to Dismiss the Indictment, ECF No. 25.

The Government returned a Superseding Indictment on May 4, 2017. *See* Superseding Indictment, ECF No. 26. The new indictment added a second count against Defendant for residing in a foreign country and engaging and attempting to engage in illicit sexual conduct with a different minor, in violation of 18 U.S.C. §§ 2423(c), (e). *Compare* Indictment, ECF No. 1, *with* Superseding Indictment, ECF No. 26.[3] The Superseding Indictment did not halt the Speedy Trial clock with respect to Count I. *See United States v. Marshall*, 935 F.2d 1298, 1302 & n.7 (D.C. Cir. 1991); *cf. United States v. Van Smith*, 530 F.3d 967, 972 (D.C. Cir. 2008).

At a status conference held May 5, 2017, Defendant was arraigned on Count II and orally moved to dismiss the new count on the same grounds as Count I. He also moved to file a reply brief as to one of his motions to dismiss, which the court granted. *See* Hr'g Tr., May 5, 2017. Defendant filed his reply brief on May 12, 2017. *See* Def.'s Reply in Supp. of Mot. to Dismiss

---

[3] Although Count I and Count II both charge Defendant with violating 18 U.S.C. § 2423(c), the language in each count differs in light of the version of the statute in effect at the time of the conduct charged in each Count. The events alleged in Count I purportedly occurred "[b]etween on or about January 17, 2007, and on or about December 2007," while the events alleged in Count II purportedly occurred "[b]etween on or about January 3, 2016, and on or about August 2, 2016." *See* Superseding Indictment, ECF No. 26. Section 2423(c) was amended in March 2013 to include the language: "or resides, either temporarily or permanently, in a foreign country." *See* Violence Against Women Reauthorization Act of 2013, Pub. L. No. 113-4, 127 Stat. 54, 142 (2013). Accordingly, Count II couches its charges in terms of Defendant's purported residency in the Philippines.

the Indictment and Superseding Indictment, ECF No. 29. With his "reply" brief, however, Defendant also moved to dismiss Count II on a ground not advanced with respect to Count I—that Count II violates the Ex Post Facto Clause. *See id.* The Government's response to that newly asserted ground for dismissal is not due until May 26, 2017. *See* LCrR 47(b). Defendant's reply is not due until June 2, 2017. *See* LCrR 47(d).

At the same status conference on May 5, 2017, the Government noticed its intention to file a motion to continue the trial based on the unavailability of certain witnesses. Without indicating whether it would agree to continue the trial in light of Speedy Trial considerations, the court identified an alternative trial date of August 14, 2017. *See* Hr'g Tr., May 5, 2017. The Government filed its Motion to Continue Trial on May 8, 2017, and Defendant filed his Opposition on May 11, 2017. *See* Gov't's Mot. to Continue Trial, ECF No. 27 [hereinafter Gov't's Mot.]; Def.'s Opp'n.

To summarize, as of the issuance of this Memorandum Opinion, a total of 26 days have run on Defendant's Speedy Trial time on Count I. The Speedy Trial clock has not started to run on Count II because Defendant orally moved to dismiss Count II on the same day he was arraigned on that count and later supplemented that motion in writing, which remains pending. *See* 18 U.S.C. § 3161(h)(1)(D).

## II. LEGAL PRINCIPLES

As previously mentioned, the Speedy Trial Act provides a criminal defendant with a statutory guarantee that he will go to trial within 70 days of the date on which his indictment is made public or he makes his initial appearance, whichever is later. *See* 18 U.S.C. § 3161(c)(1). Not every day after the time of charging or initial appearance counts toward that 70-day period, however. The Act provides a specific list of circumstances warranting delay and tolling of the

5

Speedy Trial clock. *See id.* § 3161(h). Amongst those reasons warranting an exclusion of time from the 70-day window is "[a]ny period of delay resulting from the absence or unavailability of . . . an essential witness, or "[a]ny period of delay resulting from a continuance granted by any judge . . . on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." *Id.* §§ 3161(h)(3)(A), (7)(A). The Government cites both of these exceptions as justifying an exclusion of time under the Speedy Trial Act in this case.

### A. Exclusions of Time for the Absence or Unavailability of an Essential Witness

The Speedy Trial Act does not define who qualifies as an "essential witness." In the absence of a statutory definition, the D.C. Circuit has held that an "essential witness" is one "whose testimony would be extremely important to the proceeding, perhaps providing proof that was not otherwise attainable"—in other words, "a witness so essential to the proceeding that continuation without the witness would either be impossible or would likely result in a miscarriage of justice." *United States v. McNeil*, 911 F.2d 768, 773 (D.C. Cir. 1990) (per curiam) (internal quotation marks omitted); *accord United States v. Ortiz*, 687 F.3d 660, 663 (5th Cir. 2012); *United States v. Hamilton*, 46 F.3d 271, 277 (3d Cir. 1995); *United States v. Eagle Hawk*, 815 F.2d 1213, 1218 (8th Cir. 1987); *United States v. Marrero*, 705 F.2d 652, 656 (2d Cir. 1983).[4] To prove a witness is "essential," the Government "must show how the testimony that it expects a particular witness will give fits within the overall framework of its case, and why that witness's testimony would be

---

[4] The court notes that neither side has cited a single case, including the D.C. Circuit's decision in *McNeil*, that addresses the Speedy Trial Act, let alone its exclusion for the unavailability of an "essential witness." The only cases the Government cites—*Barker v. Wingo*, 407 U.S. 514 (1972), and *United States v. Demirtas*, 204 F. Supp. 3d 158 (D.D.C. 2016)—have nothing to do with the Speedy Trial Act. *See* Gov't's Mot. at 5. Those cases involve a defendant's *constitutional* right to a speedy trial under the Sixth Amendment; they do not address a defendant's *statutory* rights under the Speedy Trial Act. Unconsented motions to exclude time under the Speedy Trial Act are not pro forma requests, and the parties would do better in the future not to treat them as such.

not only useful, but essential." *McNeil*, 911 F.2d at 774. The Circuit has recognized that the district court may not have a concrete idea of a witness's anticipated testimony at the time the court has to determine whether the witness is "essential" for purposes of the Speedy Trial Act. *See McNeil*, 911 F.2d at 773. Accordingly, the Circuit will not disturb the lower court's determination that a witness is "essential" provided that the court's determination "was reasonable in light of the information [the court] had or should have asked for at the time that the decision had to be made." *Id.*

The Act itself speaks directly to when an essential witness is considered "absent" or, as pertinent here, "unavailable." An essential witness is "unavailable" when "his whereabouts are known but his presence for trial cannot be obtained by due diligence or he resists appearing at or being returned for trial." *Id.* Although the D.C. Circuit has yet to opine on the meaning of "due diligence," other federal appellate courts appear to have reached consensus that the Government "must present evidence that the witness's presence could not be obtained through its 'reasonable' efforts" in order to meet its burden. *United States v. Burrell*, 634 F.3d 284, 290 (5th Cir. 2011) (per curiam) (quoting BLACK'S LAW DICTIONARY 523 (9th ed. 2009)) (collecting cases). This requires a showing, by testimony or affidavit, that the Government made a reasonable effort to use the resources at its disposal to bring the witness to trial—i.e., providing transportation, *see United States v. Patterson*, 277 F.3d 709, 711–12 (4th Cir. 2002); subpoenaing the witness to appear, *see United States v. Brown*, 819 F.3d 800, 819 (6th Cir. 2016); granting use immunity to secure testimony, *see Hamilton*, 46 F.3d at 279; posting bond or enforcing a writ of habeas corpus ad testificatum, *see McNeil*, 911 F.2d at 775 (Sentelle, J., concurring)—but those efforts were too much of a hardship to make or failed through no fault of the Government. *See Burwell*, 634 F.3d at 291. When the Government presents no evidence that it made reasonable efforts to secure an

7

essential witness's presence, the Government cannot satisfy the "due diligence" requirement of the Speedy Trial Act's exception allowing delay for unavailable essential witnesses. *See* 18 U.S.C. § 3162(a)(2); *Burrell*, 634 F.3d at 292; *cf. United States v. Ferguson*, 574 F. Supp. 2d 111, 114–15 (D.D.C. 2008).

### B. Exclusions of Time in the Interest of Justice

Separately, if tolling is premised on the interest of justice, the court "must set forth, in the record of the case, either orally or in writing, its reasons for finding that the needs of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). In so doing, the court must consider four factors enumerated in the statute. *Id.* § 3161(h)(7)(B).

The "interest of justice" exception is foreclosed, however, if the Government cannot satisfy the "essential witness" exclusion. The Speedy Trial Act provides that neither the "lack of diligent preparation [n]or failure to obtain available witnesses on the part of the attorney for the Government" is a reason to exclude time from the Speedy Trial Act's calculation. *Id.* § 3161(h)(7)(C). This means that if the court concludes the Government did not meet its burden to show its essential witnesses were absent or unavailable, then the interest of justice exclusion cannot apply because the delay will have resulted from the Government's failure to obtain an available witness. *See Burrell*, 634 F.3d at 292–93; *compare* 18 U.S.C. § 3161(h)(3), *with id.* § 3161(h)(7)(C).

## III. DISCUSSION

The Government moves the court to exclude all the time from June 13, 2017, to some future date in October 2017—at least 111 days[5]—under the Speedy Trial Act for two reasons: (1) four

---

[5] October 1, 2017, is a Sunday. There are 111 calendar days between June 13, 2017, and October 2, 2017.

witnesses essential to its case-in-chief are unavailable for trial on the present trial date of June 13, 2017, or the alternative trial date of August 14, 2017; and (2) a continuance is "indispensable to the interests of justice." *See* Gov't's Mot. at 1. The court first addresses the Government's argument as to each witness and, concluding no exclusion of time is warranted, then considers whether rescheduling trial is appropriate even without excluding time under the Speedy Trial Act.

### A. Unavailability of Four Essential Witnesses

As a preliminary matter, the court notes that the Government has submitted no evidence—in the form of affidavits or otherwise—to support its Motion, which could be fatal to its request for an exclusion under the "essential witness" exception. *See* 18 U.S.C. § 3162(a)(2); *Burwell*, 634 F.3d at 292; *Ferguson*, 574 F. Supp. 2d at 114–15. Nonetheless, the court will treat the representations in the Government's brief as made in good faith and assumes the reasons and dates included therein regarding witness availability are accurate. The Government's Motion, then, must demonstrate that at least one of the four witnesses is both "essential" and that the Government exercised "due diligence" by making reasonable efforts to secure the witness's presence at trial, but those efforts proved unsuccessful.

#### 1. Dr. Allison Jackson

The Government has not met its burden of showing its first witness, Dr. Allison Jackson, is "essential." The Government describes Dr. Jackson as an expert in pediatric medicine who will "assist the trier of fact in reaching a verdict in this case," but does not otherwise detail the substance of Dr. Jackson's testimony or how she fits into the "overall framework of its case." *See McNeil*, 911 F.2d at 774. The court is left to speculate whether Dr. Jackson has examined either complainant and, if she has not, what she will say to assist the trier of fact. Moreover, the Government represents that it only contacted Dr. Jackson "[i]n anticipation of a superseding

9

indictment," Gov't's Mot. at 2, leaving entirely unclear whether Dr. Jackson is even part of the Government's case-in-chief on Count I. With this thin information, the court cannot find that Dr. Jackson's testimony "would be extremely important to the proceeding" or that she is "so essential to the proceeding that continuation without [her] would either be impossible or would likely result in a miscarriage of justice." *See McNeil*, 911 F.2d at 773 (internal quotation marks omitted). Indeed, based on the Government's Motion, there is no reason to believe Dr. Jackson could not be replaced with another qualified expert in pediatric medicine.

The Government also fails to show that Dr. Jackson is "unavailable." The Government tersely represents that Dr. Jackson "is not available in June, August or September 2017 due to other trials scheduled and patient responsibilities. [She] is available on July 10, 12, and 14, 2017." Gov't's Mot. at 2. The court finds it incredible that Dr. Jackson is unavailable for all but three days of a four-month period. In any event, there is no statement from the Government that it has exercised due diligence in trying to ensure her presence for a June or August trial date. In fact, the Government does not identify *any* efforts it has made to ensure Dr. Jackson's appearance. Nor has the Government stated that Dr. Jackson refuses to make herself available for trial, or that she could not be compelled to appear by subpoena. *See* 18 U.S.C. §§ 3161(h)(3)(B), 3162(a)(2); *cf. Brown*, 819 F.3d at 819. Therefore, the Government has not shown that Dr. Jackson is unavailable.

### 2. *Agent Steve Sampilo*

The court finds that the Government's second witness—Agent Steve Sampilo—is "essential" to the proceedings, but he is not "unavailable." The Government describes Agent Sampilo as "the HSI Manila, Philippines-based case agent . . . [who] has done a great deal of the investigative work on this case in the Philippines," including being "present for interviews and

investigative acts in the Philippines," and "servi[ng] a[s] the main point of contact for the Victims in this case." Gov't's Mot. at 2. Additionally, the Government intends to designate Agent Sampilo as the case agent for this matter and "will request his presence for the entirety of the witness preparation and trial." *Id.* Although the Government has not specified whether Agent Sampilo will testify and, if so, what his testimony will entail, for present purposes the court is satisfied that Agent Sampilo is a key participant in the Government's preparation for trial, in light of his first-hand experience investigating the case and direct interactions with the complainants. *See McNeil*, 911 F.2d at 773. Accordingly, the court finds that Agent Sampilo is "essential" to the Government's case against Defendant.

Once more, however, the Government has not demonstrated that Agent Sampilo is "unavailable" for trial on June 13, 2017, or the alternative date of August 14, 2017. The Government submits that, "[f]rom July 7 to August 3, 2017, Agent Sampilo will be the only agent present in the Manila Philippines HIS office and cannot be present for trial preparation or the trial, if set during this period." Gov't's Mot. at 2. Those dates when Agent Sampilo needs to be present for duty in the Philippines do not interfere with his ability to appear as a witness or assist the Government in preparation for a trial beginning June 13, 2017. *Cf.* Def.'s Opp'n at 2. Additionally, the Government has made no indication of its efforts to determine whether, in light of Agent Sampilo's importance to its case, arrangements could be made to alter his tour of duty in the event that (1) a June trial extended into the timeframe in which Agent Sampilo would need to return to Manila, or (2) Agent Sampilo remaining in Manila until August 3, 2017, would limit his ability to assist the Government in preparing for an August trial. *Cf. Brown*, 819 F.3d at 819; *Burrell*, 634 F.2d at 292. Thus, the court concludes the Government has not shown that Agent Sampilo is unavailable.

11

### 3. *The 414 Witness*

The Government also submits that its "414 Witness" is an essential witness who is unavailable, warranting tolling of the Speedy Trial clock. The Government represents that

> [t]he 414 Witness was abused by [Defendant] as a teenager; the witness is middle-aged now. In late 2016, [Defendant] requested that the 414 Witness assist him in obtaining fraudulent witnesses to assist in his defense. [Defendant] appears to have been seeking witnesses to say that the Victim (Count 1) mislead [sic] him into believing she was 18-years old or older. The 414 Witness is biologically related to [Defendant]. The 414 Witness is essential to the government's case, and creates a commonality between the two charged Victims in this case.

Gov't's Mot. at 3. The court agrees that this witness is "essential" because only she can offer testimony about her own abuse, purportedly at the hands of Defendant, *see* Fed. R. Evid. 414, as well as Defendant's alleged efforts to obstruct his prosecution. Accordingly, the court has little trouble concluding that, at least as to Count I, the 414 Witness's testimony "would be extremely important to the proceeding, perhaps providing proof that [is] not otherwise attainable." *See McNeil*, 911 F.2d at 773.

Still, the Government has not met its burden to show it acted with due diligence in attempting to obtain the 414 Witness's appearance at trial. The Government simply submits that the 414 Witness "is unavailable from June 6 to September 1, as she has purchased a ticket to Europe for vacation," and the dates of July 11 to August 11, 2017, are particularly burdensome to her as "the 414 Witness's children will visit the Witness in Europe," and she "could not leave them unattended to return to the United States for trial." Gov't's Mot. at 3. Accepting these representations as true, the Government has demonstrated that it would be inconvenient for the 414 Witness to attend trial on June 13 or August 14, 2017, but not that she is "unavailable" within the meaning of the Speedy Trial Act. Missing from the Government's Motion is any

12

representation that the Government has offered to provide transportation for the 414 Witness to return for trial in June or August, and she has refused to voluntarily return, or it would be an undue hardship to provide such transportation. *See Patterson*, 277 F.3d at 711–12; *Burwell*, 634 F.3d at 291. The Motion is equally devoid of any statement that the 414 Witness's presence could not be ensured by issuing a subpoena, *see Brown*, 819 F.3d at 819, or that she will refuse to return for trial before October, even if subpoenaed, *see* 18 U.S.C. § 3161(h)(3)(B). Accordingly, the Government has not met its burden to show the 414 Witness is an essential witness who is unavailable. *See id.* §§ 3161(h)(3)(B), 3162(a)(2).

### 4. Agent Keith Cramsey

Lastly, the Government identifies a fourth witness—Agent Keith Cramsey—as both essential and unavailable. The Government's Motion explains that Agent Cramsey "packaged and sent the DNA for laboratory testing, and created the corresponding document." Gov't's Mot. at 3. Unless Defendant intends to stipulate to chain of custody of the DNA evidence, Agent Cramsey's anticipated testimony cannot be supplied by another witness. *See McNeil*, 911 F.2d at 773. Therefore, the court therefore agrees that Agent Cramsey is "essential."

The Government, however, has failed to show that Agent Cramsey is "unavailable" for the June 13 or August 14, 2017, trial date. The Government says that Agent Cramsey cannot attend trial because he "would like to participate in a training currently scheduled for June 5 to June 24, 2017. Agent Cramsey views this training as essential to his career, and he had previously lost an opportunity for an overseas assignment because he lacked this training." Gov't's Mot. at 3. The mere desire of a government employee to attend a training session that conflicts with trial is not enough to prove the witness is unavailable within the meaning of the Act. The Fifth Circuit recently encountered similar facts and held that, without "present[ing] any evidence that it made

reasonable efforts to secure [the agent's] presence at the scheduled trial date[]," the Government had not met its burden, and the exception for unavailable essential witnesses could not be used to exclude time under the Act. *See Burrell*, 634 F.3d at 292. There, as here, the Government should have put on the record "where [the agent]'s [training] [is] located, its hours of operation, or its attendance policies, and . . . whether it would [be] reasonably feasible for [the agent] to be brought from the training facility to the court to testify without interfering with his completion of the [training]." *Id.* Additionally, the Government needed to show that it "contacted the course administrators to explain the circumstances and determine whether there was any way in which [the agent] could both testify and complete [the training course]." *See id.* The court has none of that information before it. Accordingly, the Government has failed to demonstrate that it acted with due diligence in trying to ensure Agent Cramsey's appearance at trial.

*       *       *

In sum, while three of the four witnesses the Government lists in its Motion are "essential" to the Government's case, the Government has not demonstrated that any one of them is "unavailable" for trial starting on June 13 or August 14, 2017, such that time should be excluded under Section 3161(h)(3). As to the fourth witness—Dr. Jackson—the Government has not demonstrated that she is either "essential" or "unavailable." Accordingly, the court denies the Government's Motion insofar as it seeks to exclude time under Section 3161(h)(3).

### B. Exclusion of Time in the Interest of Justice

The Government also moves to exclude time from the Speedy Trial clock on the ground that the ends of justice will be served by so doing and outweigh the Defendant's and public's interests in a speedy trial. *See* 18 U.S.C. § 3161(h)(7)(A); Gov't's Mot. at 1. The majority of the Government's Motion discusses the essential witnesses the Government believes to be

unavailable within the meaning of Section 3161(h)(3); only in passing does the Government make an "interest of justice" argument. *See* Gov't's Mot. at 5. The Government contends that the charges against Defendant—sexual abuse of minor children—are so serious that "[t]he public's interest in justice outweighs [Defendant's] interests in a speedy trial." *See id.*

The court need not discuss at length why the Government's Motion fails; the text of the statute speaks for itself. The Government cannot hang its hat on the broader "interest of justice" exclusion when the same reasons fail to satisfy the narrower "essential witness" exclusion. *See Burrell*, 634 F.3d at 292–93. Therefore, the court will not exclude time under the Speedy Trial Act on the ground that the ends of justice outweigh the Defendant's and public's interests in a speedy trial.

### C. Whether Rescheduling Trial is Warranted Without Excluding Time Under the Speedy Trial Act

Although the Government has not met its burden to warrant exclusion of time under the Speedy Trial Act, the witnesses' scheduling conflicts, coupled with Defendant's recent supplement of his motion to dismiss Count II, raise significant questions that require the court to review whether beginning trial on June 13, 2017, remains feasible. *See United States v. Burton*, 584 F.2d 485, 490 (D.C. Cir. 1978) ("recognizing that the court has the right to control its own docket to require that cases proceed in an orderly and timely fashion, the conclusion is inescapable that the court in exercise of a sound discretion may grant or deny motions for continuances").

Both witness schedules and the need to resolve the pending motions cut against maintaining the present trial date. Only one of the four witnesses identified in the Government's Motion does not have a scheduling conflict in June—Agent Sampilo. In contrast, Dr. Jackson, the 414 Witness, and Agent Cramsey each have events or responsibilities that interfere with their appearance for a trial beginning June 13, 2017. *See* Gov't's Mot. at 2–3. Additionally, there are

three pending motions, one of which seeks dismissal of the Superseding Indictment on constitutional grounds. *See* Def.'s Mot. to Dismiss the Indictment, ECF No. 19; Def.'s Mot. to Dismiss the Superseding Indictment, ECF No. 29. That motion to dismiss is only partially ripe, as Defendant added a second constitutional ground to dismiss Count II in its reply brief, filed May 12, 2017, meaning the briefing as to that ground will not be complete until June 2, 2017, at the earliest. Given the time the court anticipates it will take to hold an oral argument on all the pending motions, issue a written opinion, and address any other pretrial issues, beginning trial on June 13, 2017, is no longer realistic.

Continuing the trial until October 2017 is not possible, either, because the Speedy Trial clock will have run on Count I by then. Because of the pending motions, the Speedy Trial clock will remain tolled on Count I of the Superseding Indictment until the parties appear for the Motions Hearing. *See* 18 U.S.C. § 3161(h)(1)(D)); *United States v. Rice*, 746 F.3d 1074, 1080 (D.C. Cir. 2014); *Van Smith*, 530 F.3d at 969. The court has re-set the Motions Hearing for June 15, 2017. *See* Revised Pretrial Order, ECF No. 33. The court must resolve Defendant's pending motions within 30 days of that hearing. *See* 18 U.S.C. § 3161(h)(1)(H). Assuming the court ruled on the pending motions on July 14, 2017, at the end of the 30-day window, the Speedy Trial clock would begin running again and, absent any further tolling, the last day possible for trial on Count I would be August 27, 2017. Thus, a trial beginning on Monday, October 2, 2017, would be too late.

Continuing the trial to the alternate date proposed at the last status hearing—August 14, 2017—is the best solution. Based on the Government's representations, Agents Sampilo and Cramsey are both available to appear in a trial beginning August 14, 2017, and the 414 Witness's children will no longer be visiting her in Europe at that time, thereby partially alleviating the inconvenience of returning to the United States for trial. *See* Gov't's Mot. at 2–3. As for

Dr. Jackson, the continuance affords the Government sufficient time either to work with her schedule or possibly find another expert. Accordingly, the court will continue the trial to August 14, 2017.

IV. **CONCLUSION AND ORDER**

In light of the foregoing, the court grants in part and denies in part the Government's First Motion for Continuance. The Government has not demonstrated that any further exclusions of time are warranted under the Speedy Trial Act. Nonetheless, given the anticipated difficulty of coordinating witnesses, the substantial nature of the motions presently pending before the court, and the fact that a hearing on those motions will be held on June 15, 2017, the court vacates the present trial date of June 13, 2017, and sets a new trial date of August 14, 2017. The dates contained in the Pretrial Order dated March 21, 2017, likewise are vacated, and the court will issue a revised Pretrial Order reflecting the new trial date.

Dated: May 16, 2017

Amit P. Mehta
United States District Judge